***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. Defendants have shown good grounds to reconsider the evidence with regard to the medical treatments received and recommended by Dr. Lacy Thornburg. However, plaintiff has not shown good grounds to reconsider the evidence with regard to her appeal. Accordingly, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein the employer-employee relationship existed between the defendant-employer and plaintiff.
3. Hartford Specialty Risk Services was the workers' compensation carrier for defendant-employer at all times relevant herein.
4. Plaintiff's average weekly wage was $362.40 per week, at all relevant times herein.
5. The parties entered into a Form 21 Agreement on November 3, 1994, which was approved by the North Carolina Industrial Commission on or about November 28, 1994.
6. Defendant-employer paid plaintiff ten and 4/7 weeks of total disability compensation from November 3, 1994 through January 15, 1995 at the rate of $241.61 per week.
7. The issue to be determined is as follows:
 a) Whether plaintiff is entitled to any additional benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On November 28, 1994, the North Carolina Industrial Commission approved a Form 21 Agreement for compensation for disability dated November 3, 1994. Pursuant to said Agreement, defendants have made payment to plaintiff of ten and four-sevenths weeks of total disability compensation from November 3, 1994 through January 15, 1995, at a compensation rate of $241.61.
2. On or about August 15, 1994, plaintiff came under the care of Dr. Wheeler, who diagnosed plaintiff with bilateral carpal tunnel syndrome. At the time, plaintiff's job with defendant-employer was as a spool sander. On or about November 3, 1994, Dr. Wheeler surgically performed a right carpal tunnel release and scheduled a left carpal tunnel release for November 17, 1994. In December of 1994 Dr. Wheeler released plaintiff to return to work for light duty of no lifting over twenty-five pounds, light use of both hands and no highly repetitious activities. Plaintiff initially returned to work with her light duty restrictions on the job of a mould sander.
3. From February 1996 through May 1997, plaintiff worked with job duties of counting stock and general paperwork. In approximately May of 1997 plaintiff was working at counting stock and laying small pieces of pasteboard on tops of sanding pieces as an assistant to the timesaver sander. However, Barbara Lowery (now Walburgh), the rehabilitation nurse, determined that this job was too repetitive and not appropriate for plaintiff. During the time that Dr. Wheeler had restrictions on plaintiff, the appropriate personnel with the plant worked with the rehabilitation professionals to provide a summary of recommendations with regards to light duty positions that may be available and appropriate for plaintiff. It was agreed that plaintiff should have a written plan identifying a rotation schedule, progression of schedule, and checkpoints to assess her progress in order to avoid activities that would aggravate plaintiff's condition, such as object size, pinching, weight of objects, continuous gripping, and sustained activity that aggravated her pain.
4. On August 18, 1995, Dr. Wheeler was of the opinion that plaintiff had reached the point of maximum medical improvement. As a result of her objective decrease in sensation and function restrictions at work, he assigned a five percent permanent partial impairment of each hand. He also noted plaintiff needed to continue the type of job that she was doing but to avoid highly repetitive type work or working repeatedly with machines that vibrate.
5. On July 24, 1996, plaintiff was evaluated by Dr. McCloskey for a spinal consultation. He noted plaintiff's history of developing bilateral carpal tunnel syndrome with bilateral hand numbness, swelling, and ache within forearm. He noted plaintiff had recurrent carpal tunnel syndrome that was controlled with her job change. He recommended no further intervention unless she worsened significantly. He further noted she had incidental cervical degenerative disc disease at C5-6 but no symptoms were felt to be related to this and no therapy was needed.
6. On August 21, 1996, plaintiff returned to Dr. Dray. At that time he noted plaintiff had declined further treatment so he discharged her from his care and assigned an eight percent permanent partial impairment of the right dominant hand and five percent of the left non-dominant hand. Her restrictions at that time were no repetitious work, wearing splinting while working, no use of vibrating or pounding tools and a maximum of forty hours per week.
7. On March 19, 1997, plaintiff was evaluated by Dr. Stephen K. Westly, which was apparently her choice for an independent evaluation. Dr. Westly agreed with the diagnosis, treatment and evaluation of plaintiff to date. He noted that she did not have symptoms or other findings suggestive of significant residual nerve compression at the right carpal canal. He indicated that if her symptoms significantly increased or interfered with her regular daily activities she may benefit from future exploration or neurolysis of the median nerve. Otherwise, he agreed with Dr. Dray for plaintiff to carry out regular work activity, which did not require repetitious or overly forceful pinching, gripping or twisting with either hand but she could engage in work of picking up, lifting and handling of objects at a fairly low repetition rate. He assessed a ten percent permanent partial impairment of the right hand and a five percent permanent partial impairment of the left hand.
8. On June 30, 1997, plaintiff was evaluated by Dr. Lacy E. Thornburg of Carolina Hand Surgery Associates. Dr. Thornburg indicated at that time that he discussed conservative treatment for cubital tunnel and possible redo of the carpal tunnel syndrome, but indicated there were no guarantees that a second surgery would help.
9. Although initially plaintiff understood that no further treatment was authorized with Dr. Thornburg, by letter dated October 31, 2001, to plaintiff's attorney, plaintiff was advised that defendants had authorized plaintiff to return to Dr. Thornburg should she require any additional care or ongoing monitoring for her symptoms of her bilateral carpal tunnel syndrome. Plaintiff was not approved to see Dr. Thornburg for her complaints of shoulder pain, which were not determined to be related to the carpal tunnel syndrome.
10. In response to plaintiff's concerns that the job she was performing with defendants in approximately May of 1997 may be unsuitable given her restrictions, Barbara Lowery (now Walburgh) visited the plant and evaluated plaintiff's job at that time. Upon determination that the job was not suitable for plaintiff and within her restrictions, defendants began to identify suitable positions in the plant. Two positions were identified, the stenciler and the watchperson positions. The functional capacity evaluation results confirmed the suitability of the watchperson job but not the stenciler job. A labor market survey was performed that revealed that security jobs are most available in the marketplace and plaintiff would enhance her marketability for other jobs by getting a GED. The labor market survey looked for work within plaintiff's experience, general background and restrictions. Thirty-three employers were contacted, six had suitable positions and were taking applications, while three had suitable positions but were not taking applications. A job description was prepared and submitted to the treating physician at the time, Dr. Thornburg. Once Dr. Thornburg reviewed the job description as well as the functional capacity evaluation, he approved the description of the watch person position and the job of watch person was offered to plaintiff. At the time of the hearing before the deputy commissioner, plaintiff remained in the job with defendant-employer with the addition of various clerical and administrative tasks that plaintiff does on a voluntary basis and has done so on a continuous basis since August of 1997. The job of watch person is found to be suitable work for plaintiff.
11. Dr. Wheeler rated plaintiff with a five percent permanent partial impairment to her right hand and a five percent permanent partial impairment to her left hand. Dr. Dray rated plaintiff with an eight percent permanent partial impairment to her right hand and a five percent permanent partial impairment to her left hand. Dr. Westly rated plaintiff with a ten percent permanent partial impairment to her right hand and a five percent permanent partial impairment to her left hand.
12. Plaintiff has an eight percent permanent partial impairment to her right hand and a five percent permanent partial impairment to her left hand.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable occupational disease of bilateral carpal tunnel syndrome, which was accepted by defendants, and all temporary total disability compensation has been duly paid. N.C. Gen. Stat. § 97-53(13).
2. Upon release to return to work, defendants offered plaintiff suitable work at the same or greater average weekly wage as prior to the injury and plaintiff accepted the suitable employment, which is not a make-work position. People v. Cone Mills Corporation, 316 N.C. 426, 437,342 S.E.2d 798, 805 (1986).
3. Defendants are to continue to provide medical treatment as reasonably necessary to effect a cure, give relief or lessen her disability. N.C. Gen. Stat. §§ 97-2(19), 97-25 97-25.1
4. As a result of plaintiff's compensable injury of bilateral carpal tunnel syndrome, she is entitled to receive sixteen weeks permanent partial disability compensation at her compensation rate of $241.61 for the eight percent rating to her right hand and she is entitled to receive ten weeks permanent partial disability compensation at her compensation rate of $241.61 for the five percent rating to her left hand. N.C. Gen. Stat. §§ 97-31(12), 97-53(13).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional total disability compensation shall be DENIED.
2. Subject to a reasonable attorney's fee, defendants shall pay to plaintiff sixteen weeks permanent partial disability compensation at her compensation rate of $241.61 for the eight percent rating to her right hand and ten weeks permanent partial disability compensation at her compensation rate of $241.61 for the five percent rating to her left hand. This amount has accrued and shall be paid in a lump sum.
3. Defendants shall pay for medical expenses incurred as a result of the compensable occupational disease as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
4. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 2 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and forwarded directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 18th day of November 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER